UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

AVANTI GAREDO,

        Plaintiff,

v.                                  **Civil Action No. 2:24-cv-559**

TRANSPORTATION DISTRICT
COMMISSION OF HAMPTON ROADS
D/B/A HAMPTON ROADS TRANSIT,

        Defendant.

## OPINION AND ORDER

This employment discrimination case is before the court on a Motion for Summary Judgment, (ECF No. 18), by Defendant Transportation District Commission of Hampton Roads, d/b/a Hampton Roads Transit ("HRT" or "Defendant") on all claims filed by Plaintiff Avanti Garedo ("Garedo" or "Plaintiff").[1] HRT argues that Garedo cannot prevail on any of the five alleged Rehabilitation Act violation claims in the Complaint as a matter of law because HRT took permissible actions and ultimately terminated Garedo's employment after determining that Garedo falsified the required DOT medical certification. For the reasons that follow,[2] the court GRANTS Defendant's Motion for Summary Judgment, (ECF No. 18).

## I.    BACKGROUND

Garedo was employed by HRT as a bus operator trainee for a little less than two months beginning July 14, 2023. Compl. ¶¶ 11, 51 (ECF No. 1, at 3, 7). A prerequisite to be a bus

---

[1] The court will use "they/them/their" pronouns when referring to Garedo out of respect for their expressed preference for gender-neutral pronouns.

[2] HRT requested oral argument on this Motion, (ECF No. 20), but the court finds the briefs and attached exhibits adequate to resolve the Motion. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J).

1

operator trainee for HRT is having a valid commercial driver's license ("CDL"), which is conditioned on obtaining a U.S. Department of Transportation ("DOT") medical certification after passing a physical examination conducted at an HRT authorized facility. Def.'s Mem. Ex. 2 ("HRT Policy & Procedure") (ECF No. 19-2, at 4); Garedo Dep. 8:13-19 (ECF No.19-22, at 3); Hill Dep. 33:11-34:19 (ECF No. 19-23, at 2-3). HRT's policy that requires DOT medical certification to maintain a CDL also states that "[i]f it is found that an employee has provided false information on their DOT Medical Certification or to the physician during their physical, the employee's employment will be terminated." HRT Policy & Procedure (ECF No. 19-2, at 7).

On July 6, 2023, Plaintiff underwent a medical examination—that included filling out a health history questionnaire—to receive their DOT medical certification. Def.'s Mem. Ex. 5 ("First DOT Medical Certification") (ECF No. 19-5, at 3-8). On the questionnaire, Garedo reported that they did not have any eye problems, did not suffer from anxiety, depression, nervousness, or other mental problems, and did not have any other health conditions. Id. at 4; see also Garedo Dep. 8:13-9:1, 14:5-20 (ECF No. 19-22, at 3-4, 8) (confirming that Garedo did not disclose any conditions in their initial DOT medical examination health questionnaire). Having passed the initial medical examination and receiving a DOT medical certification, Garedo began working at HRT. See First DOT Medical Certification (ECF No. 19-5, at 1-2).

During training, Garedo found the fluorescent lighting in the classroom to be too bright, so they began wearing a crocheted hood to class to use as a visor and shield their eyes. Compl. ¶¶ 13-15 (ECF No. 1, at 3); Garedo Dep. 33:11-35:23, 40:3-13 (ECF No. 19-22, at 9-11, 14). However, class instructor Ronald Simmons, Jr., informed Garedo that the hat was not compliant with HRT's uniform policy and asked Plaintiff to remove it. Compl. ¶ 15 (ECF No. 1, at 3); Def.'s Mem. Ex. 6 ("Incident Memo") (ECF No. 19-6); Garedo Dep. 37:7-12 (ECF No. 19-22, at 12). In

2

response, Plaintiff informed Simmons that they would need the hat to keep the light out of their eyes because they had a light sensitivity that "may be due to [their] potential autism." Garedo Dep. 9:2-14, 35:5-15 (ECF No. 19-22, at 4, 11); Incident Memo (ECF No. 19-6). Accordingly, Plaintiff requested an accommodation for their conditions. Compl. ¶¶ 15-28 (ECF No. 1, at 3-4); Garedo Dep. 35:7-11 (ECF No. 19-22, at 11).

Upon learning this information, HRT's Human Resources ("HR") department requested to meet with Garedo since Garedo did not disclose light sensitivity or autism on their DOT medical examination health questionnaire but was now requesting an accommodation. Hill Dep. 58:6-59:16 (ECF No. 19-23, at 6-7). On July 28, HR Director Danielle Hill and HR Manager Christina Malcolm spoke with Garedo to discuss Garedo's questionnaire answers. Id.; Incident Memo (ECF No. 19-6). Hill and Malcom informed Garedo that Garedo's medical certification was invalid due to Garedo's failure to disclose medical conditions on the health questionnaire, and that Garedo would need to undergo a second medical examination to obtain a new certification. Hill Dep. 59:5-16; 62:1-64:17 (ECF No. 19-23, at 7-10). Garedo clarified that they had never been formally diagnosed with autism. Id. 64:6-9 (ECF No. 19-23, at 10); Compl. ¶ 21 (ECF No. 1, at 4).

On July 31, Garedo underwent a second DOT medical examination and was notified by Dr. Dorr, the Concentra medical provider that performed the examination, on August 4 that they did not pass and would not be cleared for certification until they underwent a neurological exam. Compl. ¶¶ 23, 25, 28 (ECF No. 1, at 4-5); Def.'s Mem. Ex. 7 ("Second Medical Examination") (ECF No. 19-7, at 5); Def.'s Mem. Ex. 10 ("First DOT Disqualification") (ECF No. 19-10). As a result, Garedo would not have the DOT medical certification necessary for a CDL to drive a commercial vehicle. See Hill Dep. 94:18-95:5 (ECF No. 19-23, at 13-14). Then, HRT HR Compliance Specialist T'la-neaka Turner and Garedo's immediate supervisor Kevin Brown

3

explained to Garedo that they would be suspended without pay for ten days for allegedly falsifying their information on the DOT form. Compl. ¶ 34 (ECF No. 1, at 5); First DOT Disqualification (ECF No. 19-10). To be eligible for a new DOT medical certification, Garedo was informed that they had to obtain clearance from a neurologist regarding their alleged autism. First DOT Disqualification (ECF No. 19-10). On September 6,[3] Dr. Dorr reviewed the necessary forms Garedo provided—including a clearance letter from a psychiatrist that reported Garedo had no signs of autism—conducted an examination, and issued Garedo a new DOT medical certification, which Garedo received on September 8. Def.'s Mem. Ex. 16 ("Second DOT Medical Certification") (ECF No. 19-16); see also Compl. ¶¶ 41, 43 (ECF No. 1, at 6).

In preparing for Garedo's return to work, HRT decided on September 6 to draft a termination letter and a Last Chance Final Warning Agreement ("LCFWA") that allowed for Garedo's continued employment despite the determination that Garedo falsified their DOT medical certification in violation of HRT's policies. Def.'s Mem. Exs. 17-18 ("Termination and LCFWA Comms.") (ECF Nos. 19-17, -18); Hill Dep. 265:13-266:14 (ECF No. 19-23, at 22-23). On September 11, Plaintiff submitted an internal complaint with HRT that alleged disability discrimination and a hostile work environment based on the circumstances surrounding Plaintiff's DOT certification process and employment suspension, to which HRT responded in October by informing Garedo that HRT's investigation did not uncover evidence to support Garedo's allegations. Compl. ¶¶ 44, 52 (ECF No. 1, at 6-8); Def.'s Mem. Ex. 19 ("Internal Grievance") (ECF No. 19-19, at 1-8, 32). On September 12, 2023, Plaintiff was presented with a notice of

---

[3] Prior to the September 6 examination, Garedo informed HR on August 13 that they had made arrangements to obtain DOT medical certification from a non-HRT approved medical provider. After HR reminded Garedo that HRT policy required obtaining certification from Concentra, Garedo notified HR that Concentra approved that they receive clearance from a psychiatrist rather than a neurologist, and that they had located a provider who would see them. Def.'s Mem. Exs. 12-13 (ECF Nos. 19-12, -13). On August 23, HRT extended Garedo's suspension for an additional ten days to allow them to obtain a valid DOT medical certification. Def.'s Mem. Ex. 14 ("Second DOT Disqualification") (ECF No. 19-14).

4

termination and the LCFWA that would hold their termination in abeyance so long as Garedo did not falsify information again. Def.'s Mem. Ex. 20 ("Termination Notice") (ECF No. 19-20); Def.'s Mem. Ex. 21 ("LCFWA") (ECF No. 19-21); Compl. ¶¶ 46-49 (ECF No. 1, at 7). However, by refusing to sign the LCFWA, Plaintiff ended their employment with HRT. Compl. ¶ 51 (ECF No. 1, at 7)

On September 12, 2024, Plaintiff filed their five-count Complaint, (ECF No. 1), alleging that HRT (1) discriminated against Garedo, (2) subjected Garedo to unlawful medical examinations, (3) interfered with Garedo's exercise or enjoyment of rights, (4) created a hostile work environment for Garedo, and (5) retaliated against Garedo under the Rehabilitation Act. Compl. ¶¶ 54-99 (ECF No. 1, at 8-12). Following discovery, Defendant moved for summary judgment, (ECF No. 18), arguing that because HRT terminated Garedo's employment for falsifying their DOT medical certification and because Garedo is not disabled, Plaintiff's claims under the Rehabilitation Act fail as a matter of law. Def.'s Mem. L. Supp. Mot. Summ. J. ("Def.'s Mem.") (ECF No. 19, at 8-18). Plaintiff opposed the Motion, arguing that because they did not receive a formal diagnosis for light sensitivity or autism their failure to disclose was not a falsification of the DOT medical certification and therefore HRT did not have a valid reason to terminate Garedo's employment. Pl.'s Opp'n Memo to Def.'s Mot. Summ. J. ("Pl.'s Opp'n") (ECF No. 37, at 3-19). Defendant replied arguing that Plaintiff's own sworn testimony established that Plaintiff was not disabled and was not terminated based on a disability or perceived disability, defeating the claims of Plaintiff's Complaint. Def.'s Reply Mem. Supp. Mot. Summ. J. ("Def.'s Reply") (ECF No. 38, at 1-11). The court analyzes these arguments below, relying on the parties' evidence, but viewing any dispute of fact supported by citations to the record in the light most favorable to Garedo.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Spriggs v. Diamond Auto Glass, 242 F.3d 179, 183 (4th Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis of its motion and identifying materials in the record it believes demonstrates the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In considering a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

## III.    ANALYSIS

Plaintiff has not demonstrated any genuine disputes of material fact. In their opposition to HRT's Motion, Garedo includes a list of allegedly disputed, material facts that would preclude granting summary judgment in HRT's favor. Pl.'s Opp'n. (ECF No. 37, at 3–6). Importantly, Plaintiff disputes characterizing a failure to disclose a light sensitivity and a suspected autism diagnosis as a falsification of the DOT medical examination, which Garedo argues demonstrates the cited reason for their termination was mere pretext. Id. at 2-5. Additionally, Plaintiff disputes Defendant's assertion that they did not have a disability under the Americans with Disabilities Act of 1990 ("ADA") or the Rehabilitation Act. Id. at 5. However, most of Garedo's alleged disputes consist solely of their own allegations and fail to cite parts of the record to support the facts alleged. The Local Rules for the Eastern District of Virginia require more than citations to the pleadings to support a response brief when the moving party has produced evidence to support its claims. Specifically, the response brief must include "a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged in dispute." E.D. Va. Local. R 56(B). As explained below, after considering the claims in Plaintiff's Complaint and each alleged dispute of fact, I find that these assertions, mostly advanced without admissible evidentiary support, are insufficient to create a genuine issue of material fact that would preclude summary judgment.

A.    **Plaintiff is not a qualified individual with a disability to bring any claims under the Rehabilitation Act.**

Section 504 of the Rehabilitation Act states:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

7

29 U.S.C. § 794(a). The section incorporates by reference "[t]he standards applied under [T]itle I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.)" to determine whether the Rehabilitation Act has been violated. 29 U.S.C. § 794(d). The Fourth Circuit likewise "construe[s] the ADA and the Rehabilitation Act to impose similar requirements." Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 461, 461-62 (4th Cir. 2012). However, as a result of the differences in statutory language, to establish liability under the Rehabilitation Act, causation must occur "solely by reason of" the disability. Id. (citing Baird ex rel. Baird v. Rose, 192 F.3d 462, 468-69 (4th Cir. 1999)); 29 U.S.C. § 794(a).

For all of the claims in Plaintiff's Complaint, one threshold question is whether Garedo is an "individual with a disability" that qualifies for protection under the Rehabilitation Act. "A court may resolve this issue as a matter of law." Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 254 (4th Cir. 2006). An "individual with a disability" is defined as one who: (1) has "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) has "a record of such an impairment;" or (3) is "regarded as having such an impairment." 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g). "To qualify under the [Rehabilitation Act] as a protected disability that substantially limits a major life activity, the impairment must [substantially] limit functions 'such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" Hooven-Lewis v. Caldera, 249 F.3d 259, 269 (4th Cir. 2001) (quoting 29 C.F.R. § 1614.203(a)(3)[4]).

Plaintiff argues they have established a disability that substantially limits a major life activity. Pl.'s Opp'n (ECF No. 37, at 7-9). But relying mainly on Garedo's own testimony,

---

[4] The Code of Federal Regulations has been updated since the Hooven-Lewis holding, and the definition of major life activities—although almost identical to the language of the opinion—is now defined in 29 C.F.R. 1630.2(i).

Defendant argues that their light sensitivity is episodic and that both their light sensitivity and potential autism do not have a formal diagnosis. Plaintiff argues that a disability does not require a formal diagnosis and that their light sensitivity—a result of their potential autism—constitutes a disability because it impairs their ability to participate in HRT's classroom training environment without accommodations. Id. at 8-9 (citing Heiko, 434 F.3d at 254; Toyota Motor Mfg., Ky. v. Williams, 534 U.S. 184, 191 (2002)).

Without a diagnosis of any kind, Plaintiff fails to demonstrate that their alleged impairments substantially limit any major life activity to be characterized as a disability. In fact, limiting the impacts of the alleged impairments to just a classroom environment further supports the conclusion that Plaintiff does not have a disability. Additionally, Plaintiff testified unequivocally that they did not have a diagnosed disability at the time of employment with HRT nor do they currently have a diagnosed disability. Garedo Dep. 74:7-12 (ECF No. 19-22, at 22). While the court acknowledges that Plaintiff claims to have discussed their neurodivergent difference with a therapist, any alleged impairment they may have does not substantially limit a major life activity for Plaintiff to be considered an individual with a disability under the Rehabilitation Act. Even if Plaintiff was "not entirely sure" whether they had an undiagnosed disability, they confirmed during their deposition that the symptoms they face do not impair their daily life. Id. 74:10-76:21 (ECF No. 19-22, at 22-24). Plaintiff does not dispute their prior testimony or offer any contrary facts supported by citations to the record. Instead, Plaintiff argues that their deposition testimony—conceding the absence of disability—is not determinative because as a lay person, they did not understand the legal definition of disability, and as a neurodivergent individual, they interpreted HRT counsel's questions too literally. Pl.'s Opp'n (ECF No. 37, at 9). However, Plaintiff fails to offer any evidence or legal authority to support this theory. Moreover,

9

Plaintiff was represented by legal counsel during the deposition and their counsel could have corrected any misunderstanding during the questioning. Thus, Plaintiff has not established that they have a physical or mental impairment that substantially limits a major life activity to be considered an individual with a disability. See 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1); 29 C.F.R. § 1630.2(g).

Plaintiff also argues they were "regarded as" having a disability under 42 U.S.C. § 12102(1)(c) and thus remain protected against adverse employment actions under the Rehabilitation Act. Pl.'s Opp'n (ECF No. 37, at 10). "An individual meets the requirement of 'being regarded as having . . . an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(a); 29 C.F.R. 1630.2(g)(l)(iii). In this case, Garedo contends they verbally disclosed a suspicion of autism before requesting an accommodation for their light sensitivity and wore a pin identifying their neurodivergence, which put HRT on notice of their impairment. Pl.'s Opp'n (ECF No. 37, at 10) (citing Garedo Dep. 9:12-18 (ECF No. 19-22, at 4)). Even with this notice, however, HRT did not know about Plaintiff's suspicion of impairment because Garedo did not disclose that information on the health questionnaire. As a result, the actions HRT took after being informed of Garedo's potential impairments were in line with HRT's standard operating procedures to accurately assess Plaintiff's capabilities for the job and were meant to rectify the lapse in information due to Garedo's failure to disclose. Hill Dep. 42:4-16, 264:2-21 (ECF No. 19-23, at 5, 21); see also HRT Policy & Procedure (ECF No. 19-2, at 6-7). Without a substantial impairment that impacts a major life activity and without being regarded as having a disability, Plaintiff is not a qualified individual with a disability afforded protection under

10

the Rehabilitation Act. See 42 U.S.C. § 12102(1); 29 U.S.C. § 705(20)(B); 29 C.F.R. § 1630.2(g).

Thus, Plaintiff cannot succeed on all five of the claims in their Complaint alleging that HRT

violated the Rehabilitation Act, and the court will grant summary judgment for the Defendant.

**B.      Plaintiff also fails prove the other requisite elements for all five counts in the Complaint alleging violations of the Rehabilitation Act.**

**1.      Plaintiff's employment was not terminated due to an alleged disability but rather was terminated for falsifying information in a medical questionnaire.**

To establish a claim for discrimination under the Rehabilitation Act, incorporating the

standards of the ADA, Plaintiff must demonstrate that they (1) have a disability, (2) are a "qualified

individual" for the employment in question, and (3) their employer discharged them (or took other

adverse employment action) because of their disability. Williams v. Virginia Polytechnic Inst. &

State Univ., 451 F. Supp. 3d 467, 478 (E.D. Va. 2020) (quoting Jacobs v. N.C. Admin. Office of

the Courts, 780 F.3d 562, 575 (4th Cir. 2015)); 29 U.S.C. § 794(d).   Once the plaintiff has

established such a claim, it is subject to the McDonnell Douglas burden shifting framework that

places a burden of production, not persuasion, on the employer to "articulate a legitimate non-

discriminatory reason for the adverse action." Williams v. Virginia Polytechnic Inst. & State

Univ., 451 F. Supp. 3d 467, 478 (E.D. Va. 2020) (citing McDonnell Douglas Corp v. Green, 411

U.S. 792 (1973)). "[I]f the employer provides evidence of a nondiscriminatory reason for the

action, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the

employer's articulated reason is a mere pretext, and that the true reason is either discriminatory or

retaliatory." Id. (citing McDonnell Douglas Corp, 411 U.S. 792)).

For the reasons stated above, Plaintiff is not disabled and thus is not entitled to protections

of the Rehabilitation Act.  However, even if Plaintiff were disabled, they do not meet the causation

element of a discrimination claim.   A bus operator for HRT needs a valid DOT medical

11

certification, and by failing to disclose their medical conditions, Plaintiff invalidated their initial DOT Medical Certification. HRT Policy & Procedure (ECF No. 19-2, at 7) ("A valid DOT medical certification is required to maintain a CDL. An employee who does not maintain their DOT medical certification is considered to no longer meet the CDL requirements needed for their position. If it is found that an employee has provided false information on their DOT Medical Certification or to the physician during their physical, the employee's employment will be terminated."). Plaintiff was terminated for omitting information on a health questionnaire and thus "falsifying" their DOT Medical Certification. Plaintiff concedes their termination was due to this failure to disclose "light sensitivity or possible autism in [their] initial DOT questionnaire." Garedo Dep. 9:19-10:14 (ECF No. 19-22, at 4-5). Additionally, by providing Plaintiff with a LCFWA that granted an opportunity to continue employment if Plaintiff agreed not to engage in "another incident of providing incomplete, false, or misleading information" to HRT, Defendant supports the conclusion that the "but for cause" of Plaintiff's termination was the falsification of their DOT medical examination health questionnaire and the refusal to promise not to commit a similar infraction, both unrelated to any impairments resulting from their alleged disability. See LCFWA (ECF No. 19-21). An employee's termination for providing false information during a pre-employment medical examination does not raise a reasonable inference of unlawful discrimination because such "misconduct—even misconduct related to a disability—is not itself a disability, and an employer is free to fire an employee on that basis." Sigley v. ND Fairmont LLC, 129 F.4th 256, 261 (4th Cir. 2025) (citations omitted).[5] Because their termination was not the

---

[5] Although Plaintiff argues that Sigley is inapplicable in this case because Garedo did not have a formal diagnosis that they lied about unlike the plaintiff in Sigley, Pl.'s Opp'n (ECF No. 37, at 13-14), the court finds Sigley persuasive in determining whether falsifying records is a nondiscriminatory reason for termination.

result of an alleged disability, Plaintiff cannot prove the causation required for a discrimination claim under the Rehabilitation Act.

Plaintiff argues that HRT's reason for terminating their employment was just pretext, and as such, there remains a genuine dispute of material fact. Pl.'s Opp'n (ECF No. 37, at 11). Primarily, Plaintiff disputes whether their actions should be considered a "falsification" of medical records, which would affect the analysis for whether HRT had a legitimate reason to terminate. Id. at 3-4. But as with their other arguments, Garedo cites no factual support for their position. Once an employer provides a nondiscriminatory reason for termination, the burden of proof shifts back to the employee to "prove by a preponderance of the evidence that the employer's articulated reason [was] a mere pretext." Williams v. Virginia Polytechnic Inst. & State Univ., 451 F. Supp. 3d 467, 478 (E.D. Va. 2020) (citing McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973)). To demonstrate pretext, a plaintiff must show that the employer's stated reason for termination is "unworthy of credence" or that there are "other forms of circumstantial evidence sufficiently probative of [disability] discrimination." Amos v. Welles, 477 F. Supp. 3d 408, 417 (E.D.N.C. 2020). In this case, HRT determined that omission of information from the medical examination health questionnaire was falsification of the DOT Medical Certification and thus reason to terminate employment. See Hill Dep. 263:6-9 (ECF No. 19-23, at 20). Although Plaintiff purports to dispute whether their responses to the first medical examination health questionnaires were false, they do not dispute that additional disclosures made in the second examination led a medical provider to prohibit Garedo from receiving a DOT medical certification. Thus, HRT has met its burden of production by articulating that falsifying medical records was its legitimate, nondiscriminatory reason to terminate Garedo's employment.

Plaintiff fails to demonstrate that HRT's reason for termination is "unworthy of credence" or provide any other form of evidence that would be probative of discrimination. Plaintiff argues that light sensitivity is not an eye problem and did not need to be reported. Pl.'s Opp'n (ECF No. 37, at 2). Plaintiff also argues that because they did not have a diagnosis to report, including for autism or neurodivergent differences, and because the health questionnaire did not include any questions regarding potential diagnoses, they believed disclosure was not necessary. Id. at 4. But the health questionnaire was not aimed at identifying disability. It did specifically ask if Plaintiff had any eye problems, and despite having a light sensitivity, Plaintiff answered no. First DOT Medical Certification (ECF No. 19-5, at 4). However , nowhere does Plaintiff dispute that they do experience light sensitivity, and Plaintiff has not offered any evidence why their light sensitivity would not be an eye problem. Additionally, there was a section on the questionnaire titled "[o]ther health condition(s) not described above," and Plaintiff did not report their suspected autism (which Plaintiff now asserts as the cause for their light sensitivity) because they claimed it was not "relevant" to the duties of a bus operator trainee. See id. However, if Plaintiff's light sensitivity was a result of their potential autism, then it plainly was relevant to their duties. See Garedo Dep. 35:11-14 (ECF No. 19-22, at 11). The light sensitivity, and thus the potential autism diagnosis, is relevant to a bus operator's duties because an intolerance for artificial lighting could impair Plaintiff's ability to drive a bus through tunnels, as noted in Dr. Dorr's denial of DOT medical certification following Garedo's second exam. Second Medical Examination (ECF No. 19-7, at 5). Therefore, HRT's reason to terminate Plaintiff was not mere pretext. As such, the Plaintiff does not have a discrimination claim against HRT as a matter of law.

14

## 2.    The medical examinations HRT required Plaintiff to undergo were job-related.

The Rehabilitation Act, incorporating the ADA, prohibits employers from requiring a medical examination or "mak[ing] inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquire is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4); 29 U.S.C. § 791(f); Porter v. U.S. Alumoweld Co., Inc., 125 F. 3d 243, 246 (4th Cir. 1997). The Equal Employment Opportunity Commission ("EEOC") regulations clarify[6] that "[t]his provision permits employers to make inquiries or require medical examinations (fitness for duty exams) when there is a need to determine whether an employee is still able to perform the essential functions of his or her job." Id. (quoting 29 C.F.R. Part 1630, App. § 1630.14(c)).

In this case, all three of the medical examinations Plaintiff underwent were "job-related and consistent with a business necessity" to their employment with HRT. HRT is subject to DOT regulations, which require that all individuals needing a CDL must pass a medical exam to acquire a DOT medical certification. Va. Code § 46.2-341.4, .6; 49 C.F.R. § 391.43. As a bus operator trainee, Plaintiff was required to hold a valid CDL and therefore was required to pass a medical examination as a prerequisite to their employment with HRT. See id.; Def.'s Mem. Ex. 1 ("HRT Bus Operator Trainee Job Description") (ECF No. 19-1, at 3). On learning that Garedo failed to disclose their light sensitivity or possible autism, HRT required a second medical examination to confirm whether Garedo was still qualified. Hill Dep. 41:7-42:16 (ECF No. 19-23, at 4-5). Garedo underwent a physical examination on July 31, 2023, and the provider concluded Garedo did not

---

[6] "Administrative interpretations of the ADA by the enforcing agency (here, the EEOC), 'while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgement to which courts and litigants may properly resort for guidance.'" Porter, 125 F.3d at 246 (quoting Meritor Sav. Bank v. Vinson, 477 U.S. 57, 65 (1986)).

15

meet the certification standards and was "not qualified to drive [a] commercial vehicle" because Garedo would be "unable to tolerate artificial lighting," which is an issue because they "[m]ay have to traverse tunnels while driving [a] bus." Second Medical Examination (ECF No. 19-7, at 1, 5, 7). The medical examiner concluded that Plaintiff required clearance from a neurologist (later modified to a psychiatrist) for a DOT medical certification to hold a valid CDL. See First DOT Disqualification (ECF No. 19-10). Once a psychiatrist cleared Garedo, they went through a final medical examination to obtain a valid DOT medical certification which is required to hold a CDL. See Va. Code § 46.2-341.4, .6; 49 C.F.R. § 391.43; Second DOT Medical Certification (ECF No. 19-16, at 2-4).

Plaintiff contends that because HRT did not provide an explanation for why suspected autism or light sensitivity would affect essential job functions, HRT used the certification process to deny Plaintiff accommodations and terminate them for having a disability, which is not a legitimate reason to have medical examinations. Pl.'s Opp'n (ECF No. 37, at 14-15). However, Plaintiff offers no evidence to prove that is the case in this matter. In fact, by requesting accommodations for their alleged impairments, Plaintiff concedes that the impairments were relevant, to some extent, to the duties of a bus operator. Additionally, by failing to disclose these possible conditions in the DOT physical examination, Plaintiff deprived medical providers the opportunity to evaluate whether these possible conditions could impact Plaintiff's ability to operate a bus safely with or without accommodations. During Plaintiff's second medical examination, the medical provider specifically denied medical certification because of the provider's conclusion that light sensitivity could affect Plaintiff's driving abilities in tunnels. Second Medical Examination (ECF No. 19-7, at 5). By requiring additional DOT medical examinations, HRT was ensuring accurate medical information was available and considered before granting DOT medical

16

certifications. Thus, Plaintiff's medical examinations—required due to HRT's obligations under DOT regulations—met the Rehabilitation Act exception for inquiries that are "job-related and consistent with business necessity." See 42 U.S.C. § 12112(d)(4); 29 U.S.C. § 791(f). Accordingly, the court finds there is no genuine issue of material fact for Plaintiff's unlawful medical examination claim.

### 3.    Plaintiff does not have a valid interference claim.

Under the ADA, it is unlawful for an employer to "coerce, intimidate, threaten, or interfere with" an employee's effort to exercise or enjoy any right under the ADA. 42 U.S.C. § 12203(b). A prima facie claim of interference under the Rehabilitation Act, incorporating the ADA, must demonstrate that: "(1) [the employee] engaged in activity statutorily protected by the ADA; (2) [the employee] was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) [the employers] coerced, threatened, intimidated, or interfered on account of [the employee's] protected activity; and (4) [the employers] were motivated by an intent to discriminate." Kelly v. Town of Abingdon, Va., 90 F.4th 158, 171 (4th Cir. 2024) (quoting Frakes v. Peoria Sch. Dist. No. 150, 872 F. 3d 545 550-51 (7th Cir. 2017)[7]); 29 U.S.C. § 794(d).

By "declining to engage in a good faith interactive process, forcing Garedo to endure numerous unnecessary medical and psychiatric evaluations, suspending Garedo, and terminating Garedo before completing the investigation into their complaint of disability discrimination," Plaintiff argues HRT coerced, intimidated, threatened, or interfered with Garedo's exercise or

---

[7] The Fourth Circuit did not interpret 42 U.S.C. § 12203(b), the provision of the ADA to bring forth an interference claim but rather applied a framework from the Seventh Circuit in Kelly because both parties applied that framework. Id. at 171. The Fourth Circuit noted its hesitation to adopt the standard outright because the Seventh Circuit adopted the four-factor test from Fair Housing Act (FHA) cases "on the grounds that the ADA's interference provision, 42 U.S.C. § 12203(b), closely mirrors the FHA's interference provision, 42 U.S.C. § 3617." Id. at 171 n. 9. However, because the Fourth Circuit has yet to interpret the FHA's interference provision, it did not definitely conclude that the same line of reasoning would apply. However, like the parties in the Kelly case, the parties here do not argue an alternative framework. The Fourth Circuit is comfortable adopting the Seventh Circuit's framework when the parties are in agreement. As such, the court similarly applies the Seventh Circuit's framework in this case.

17

enjoyment of rights protected under the Rehabilitation Act.  Compl. ¶ 78 (ECF No. 1, at 10). However, Plaintiff does not have a valid interference claim under the Rehabilitation Act. Requiring Plaintiff to have a valid DOT medical certification, pursuant to the Virginia code, was a valid, non-discriminatory reason to require Garedo to undergo medical exams.  Even if Plaintiff first tried to raise concerns about their training and obtain accommodations, HRT was permitted to require additional medical examinations as determined above.  See also Kelley v. Mayorkas, 694 F. Supp. 3d 715, 726 (E.D. Va. 2023) (holding that it is established that an employer can require medical documentation to evaluate a request for a reasonable accommodation). Additionally, HRT's policies also clearly state that falsifying medical examination information leads to termination.  HRT Policy & Procedure (ECF No. 19-2, at 7).  Even then, HRT was willing to continue employing Plaintiff, but when Plaintiff refused to sign the LCFWA, they gave up any opportunity to continue their employment and engage in an interactive process.  See LCFWA (ECF No. 19-21).  Finally, because termination was a valid response to Garedo's breach of company policy, HRT was not obligated to complete an investigation of Plaintiff's Internal Grievance. Thus, Plaintiff's interference claim fails as a matter of law.

### 4.     Plaintiff was not subjected to a hostile work environment.

In order to establish a hostile work environment claim, Plaintiff must demonstrate that "the alleged conduct: (1) was unwelcome; (2) resulted because of [their] gender, disability, or prior protected activity; (3) was 'sufficiently severe or pervasive' to alter the conditions of [their] employment; and (4) was imputable to [their] employer." Pueschel v. Peters, 577 F. 3d 558, 564-65 (4th Cir. 2009) (quoting Ocheltree v. Scollon Prods. Inc., 335 F.3d 325, 338 (4th Cir. 2003)). Plaintiff has failed to demonstrate that they were subject to any hostile conduct, much less meet the severe or pervasive conduct standard needed to establish a hostile work environment.  Plaintiff

argues that a jury could find disability-based hostility because Defendant allegedly referred to Garedo as "autistic," forced them to undergo three medical examinations, falsely accused Garedo of being untruthful, suspended Garedo without pay, did not inform them of a grievance process, and ultimately terminated Garedo one day after they submitted a discrimination grievance. Compl. ¶ 87 (ECF No. 1, at 11); Pl.'s Opp'n (ECF No. 37, at 16). The facts in this case demonstrate that Plaintiff's examples related to HRT's actions in response to Plaintiff's new disclosure of potential disabilities do not amount to creating a hostile work environment. They were legitimate actions HRT took to remain compliant with its own internal policy and DOT regulations. Even if Plaintiff found the conduct to be hostile, there is no evidence of the conduct being severe or pervasive. As such, Garedo's hostile work environment claim fails.

### 5.   Defendant suspended and then terminated Plaintiff for legitimate, non-retaliatory reasons.

The Rehabilitation Act incorporates by reference § 12203(a) of the ADA, which provides in relevant part that "no person shall discriminate against an individual because such individual has opposed any act or practice made unlawful by this Act." 29 U.S.C. § 794(a); 42 U.S.C. § 12203(a). For a prima facie retaliation claim, an individual must demonstrate that "(1) plaintiff engaged in [a] protected activity. . .; (2) the employer took adverse employment action against plaintiff; and (3) a causal connection existed between the protected activity and the adverse action." Hooven-Lewis v. Caldera, 249 F.3d 259, 272 (4th Cir. 2001) (citing Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998)).

Plaintiff alleges that they engaged in a protected activity by "inquiring about a reasonable accommodation and filing a grievance alleging disability discrimination," and that HRT retaliated by "suspending and then terminating" their employment. Compl. ¶¶ 97-98 (ECF No. 1, at 11-12). However, although Plaintiff's filing of an internal complaint to address their grievances with the

19

medical certification process may be considered a protected activity, HRT made the decision to suspend and then later terminate employment on September 6, 2023, five days before Garedo filed the internal complaint. Def.'s Mem. Ex. 18 ("HR Termination Emails") (ECF No. 19-18, at 2). The temporary suspension and eventual termination of Garedo complied with HRT's policies. HRT Policy & Procedure (ECF No. 19-2, at 7). Thus, Plaintiff's termination was not a result of the internal complaint filing. Additionally, because Plaintiff concedes that HRT terminated their employment after they provided false information on the DOT medical questionnaire, Plaintiff is unable prove that "a causal connection existed" between any alleged protected activity and their termination. See Garedo Dep. 9:19-10:14 (ECF No. 19-22, at 4-5); see also Hooven-Lewis, 249 F.3d at 272. Thus, there is no genuine issue of material fact regarding the reason for Plaintiff's termination summary judgment for HRT is appropriate.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment (ECF No. 18). The Clerk is DIRECTED to enter judgment in favor of Defendant HRT.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia
May 6, 2026

20